**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOHN RICHARD PERULLO, ) | Case No. 25-30909-CGB |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| KRUGER PACKAGING, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 25-03018-CGB |
| ) | |
| JOHN RICHARD PERULLO, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S ORIGINAL ANSWER TO
COMPLAINT OBJECTING TO ENTRY OF DISCHARGE**

COMES NOW Defendant *John Richard Perullo* ("*Debtor*", "*Defendant*" or "*Perullo*"), and files his *Original Answer to Original Complaint Objecting to Entry of Discharge* (the "*Answer*") filed by Plaintiff *Kruger Packaging, LP* ("*Plaintiff*" or "*Kruger*"), a creditor of Debtor and respectfully shows as follows:[1]

1. **Paragraph 1** of the *Complaint* states:

   **I.    INTRODUCTION**

   Kruger files this adversary proceeding to object to the discharge of the Debtor, Mr. John Perullo, in Bankruptcy Case No. 25-bk-30909. Kruger is a creditor of the Debtor and brings this action pursuant to 11 U.S.C. § 727(a) and 727(c), as well as Fed. R. Bankr. P. 4004. The Debtor made multiple fraudulent transfers after the substantial debt to Kruger arose, including in the year prior to the filing of the bankruptcy petition, rendering all debts nondischargeable pursuant to Section 727(a)(2) of the Bankruptcy Code. Without limitation, the Debtor made fraudulent transfers to his wife pursuant to what Mr. Perullo claims was a marital separation

---

[1] *Perullo's Original Answer* is filed subject to his *Motion to Dismiss* filed on November 18, 2025 (**Doc. No. 5**). Thus, this *Answer* is filed subject to, and without waiving, his pending Rule 12(b)(6) *Motion to Dismiss*.

John D. Perullo/Kruger Packaging, LP - Defendant's *Original Answer* - Page 1

agreement that was never approved by any court. The transfers were intentional fraudulent transfers as they were made with the intent to hinder, delay, or defraud Kruger.

In response to **Paragraph 1**, other than the statement as to why *Kruger* brings the adversary proceeding, *Perullo* objects to the allegations in **Paragraph 1** in their entirety. As *Perullo's* introduction.

2. **Paragraph 2** of the *Complaint* states:

### II.   JURISDICTION AND VENUE

This adversary proceeding arises out of the Chapter 7 bankruptcy petition filed in this Court by Debtor on or about July 17, 2025.

*Perullo* has no objection to the procedural statement in **Paragraph 2** of the *Complaint*.

3. **Paragraph 3** of the *Complaint* states:

This Court has jurisdiction pursuant to 11 U.S.C. § 523 and 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The El Paso division is a proper venue for the adversary proceeding.

*Perullo* has no objection to the procedural statement in **Paragraph 3** of the *Complaint*.

4. **Paragraph 4** of the *Complaint* states:

### III. PARTIES

John Richard Perullo ("Debtor" or "Perullo") is the Debtor and is the Defendant in this adversary proceeding.

*Perullo* has no objection to the factual statement in **Paragraph 4** of the *Complaint*.

5. **Paragraph 5** of the *Complaint* states:

Kruger Packaging, LP, ("Plaintiff" or "Kruger") is a creditor of Debtor and is the Plaintiff in this adversary proceeding.

*Perullo* has no objection to the factual statement in **Paragraph 5** of the *Complaint*.

6. **Paragraph 6** of the *Complaint* states:

### IV.   FACTUAL ALLEGATIONS

**A. The Debt to Kruger**

In 2018, Debtor was the sole member of Corrugated Synergies International, LLC ("CSI"). At the time, CSI was in the process of launching two newly formed wholly owned subsidiaries: Visual Impact Preprint, LLC ("VIP") and Universal Sheets, LLC ("Universal").

*Perullo* has no objection to the factual statements in **Paragraph 6** of the *Complaint*.

7. **Paragraph 7** of the *Complaint* states:

    Kruger, CSI, VIP and Universal each had their own niche in the packaging industry. Seeing an opportunity for growth through working together, Kruger and CSI began negotiating a joint venture whereby Kruger would obtain equity in VIP and Universal in exchange for financing their expansion. The general terms for the anticipated deal (the "Proposed Transaction") were set forth in a term sheet (the "Term Sheet") signed by the parties in August and September of 2018.

    *Perullo* has no objection to the factual statements in **Paragraph 7** of the *Complaint*.

8. **Paragraph 8** of the *Complaint* states:

    However, CSI began running out of cash before the Proposed Transaction could close. Accordingly, the parties agreed to a series of three loan documents (the "Loan Documents") to provide CSI with the short-term funding it needed to proceed with the Proposed Transaction.

    *Perullo* has no objection to the factual statements in **Paragraph 8** of the *Complaint*.

9. **Paragraph 9** of the *Complaint* states:

    The Loan Documents included a loan agreement between Kruger and CSI (the "Loan Agreement"); a pledge agreement between Kruger and CSI (the "Pledge Agreement"); and a guarantee agreement between Kruger and Debtor (the "Guarantee Agreement").

    *Perullo* has no objection to the factual statements in **Paragraph 9** of the *Complaint*.

10. **Paragraph 10** of the *Complaint* states:

    In his individual capacity under the Guarantee Agreement, Debtor guaranteed the "payment and the performance in full" of all "Obligations," which is defined to include all liabilities and obligations under all of the Loan Documents and other agreements or instruments relating to the same. *See* Guarantee Agreement, § 2 and § 1.3.

*Perullo* has no objection to the factual statements in **Paragraph 10** of the *Complaint*.

11. **Paragraph 11** of the *Complaint* states:

    Kruger relied on the representations of the Loan Documents, particularly with respect to use of loan proceeds and the ability and intent of Debtor to comply with his obligations. The Debtor breached his agreements under the Loan Documents and frustrated the remedies available to Kruger in order to avoid payment of his monetary obligations to Kruger.

    In response to **Paragraph 11**, *Perullo* can neither admit nor deny the allegations therein.

*Perullo* is not in a position to know what *Kruger* relied upon. Moreover, *Perullo* is not aware of what remedies available to *Kruger* he "*frustrated…in order to avoid payment of his monetary obligations to Kruger*". To the contrary, *Kruger* has been able to -

   a). File suit in Canada and obtain a judgment (the "*Canadian Judgment*") (See *Canadian Action* reference below);

   b). Obtain the appointment of a *State Court Receiver* over the referenced entities;

   c). Domesticate the *Canadian Judgment* into a Texas judgment; and

   d). Obtain garnishments of *Perullo's* bank accounts in Texas.

Additionally, *Perullo* has made settlement offers to *Kruger* which have been rejected or unresponded to in an attempt to avoid seeking bankruptcy relief. Making settlement offers is inconsistent with alleging that he has sought "*to avoid payment of his monetary obligations to Kruger*".

12. **Paragraph 12** of the *Complaint* states:

    On January 10, 2020, Plaintiff filed a lawsuit in Quebec, Canada against the Debtor and CSI, in the Superior Court of Quebec, Province of Quebec, District of Montréal under cause number 500-17-111115-203 (the "Canadian Action"). Plaintiff commenced the Canadian Action in order to recover amounts owed under the Loan Agreement and to recover the amounts owed under the Guarantee Agreement from the Debtor.

*Perullo* has no objection to the factual statements in **Paragraph 12** of the *Complaint*.

13.     **Paragraph 13** of the *Complaint* states:

    On May 30, 2023, Plaintiff obtained a judgment in the Canadian Action in favor of Plaintiff and against the defendants, jointly and severally, in the sum of CAD$2,100,827.49 as of May 29, 2023, with interest at an annual rate of 10% (the "*Canadian Judgment*").

    *Perullo* has no objection to the factual statements in **Paragraph 13** of the *Complaint*.

14.     **Paragraph 14** of the *Complaint* states:

    Kruger thereafter moved for recognition of the foreign judgment so that it could pursue collection of the judgment against the Debtor in the United States. On July 3, 2023, filed its Original Petition for Recognition of Foreign-Country Judgment in the District Court for El Paso County, Texas. The District Court recognized and issued final judgment from a Texas court (the "Texas Judgment") in the amount of $1,656,835.67, with interest at an annual rate of 10% accruing as of January 24, 2024, plus all costs and legal fees.

    *Perullo* has no objection to the factual statements in **Paragraph 14** of the *Complaint*.

14.     **Paragraph 14** of the *Complaint* states:

    **B. Debtor's Frustration of Kruger's Attempts to Collect its Debt**

    The Debtor engaged in a pattern of conduct to frustrate repayment of the debt owed to Kruger. For instance, the Debtor made meritless arguments in opposition to Kruger's action to recognize the Canadian Judgment in El Paso, County.

    In response to **Paragraph 14** of the *Complaint*, *Perullo* is not an attorney, he did not make "meritless arguments in opposition to *Kruger's* action to recognize the *Canadian Judgment* in El Paso County, Texas". *Perullo* retained an experienced state court litigator (also Board Certified in Business Bankruptcy) to represent him in the domestication action, and his attorney made the arguments. *Perullo* does not know what those arguments were, much less whether they were meritless. Though the *Canadian Judgment* was subsequently domesticated, to the best of his

knowledge, there are no findings by the state court that *Perullo's* arguments - through his attorney - were meritless, nor were there sanctions for making "meritless arguments in opposition".

15. **Paragraph 15** of the *Complaint* states:

    Additionally, Kruger sought propounded discovery on the Debtor regarding his assets. The Debtor never served a verified response to any of the discovery requests propounded by Kruger, and Debtor did not respond in any form or produce any documents until the eve of the hearing on Kruger's first Motion to Compel Discovery.

    *Perullo* has no objection to the factual statements in **Paragraph 15** of the *Complaint*.

However, they are irrelevant for purposes of denying *Discharge*.

16. **Paragraph 16** of the *Complaint* states:

    The documents that Debtor did eventually produce were woefully deficient. Accordingly, on July 8, 2025, Kruger sent Perullo a letter threatening to file a second motion to compel discovery unless Debtor provided full and complete responses and production by July 21, 2025. On July 17, 2025, Perullo filed his petition for bankruptcy.

    *Perullo* has no objection to the factual statements in **Paragraph 16** of the *Complaint*.

However, were the post-judgment information provided "woefully deficient", *Kruger* would not have been able to successfully garnish Perullo's bank accounts.

17. **Paragraph 17** of the *Complaint* states:

    **C.     Fraudulent Transfers, Including Within One Year of the Petition**

    The Debtor made multiple fraudulent transfers with the intent to hinder, delay, or defraud Kruger, including in the year prior to the commencement of his bankruptcy case.

    *Perullo* objects to the legal conclusions contained in P**aragraph 17**.

18. **Paragraph 18** of the *Complaint* states:

    The Debtor has asserted that he entered into an unfinalized marital separation agreement with his wife, Beth Perullo, in late 2021. As of late 2021, Kruger had filed suit against the Debtor on the Guarantee Agreement, and the Debtor was aware of such suit and the fact that he owed substantial amounts to Kruger.

*Perullo* admits the assertion in **Paragraph 18** that "*he entered into an unfinalized marital separation agreement with his wife, Beth Perullo, in late 2021.*" As referenced in *Kruger's* **INTRODUCTION**, *supra*, *Perullo* and his wife, *Beth Perullo*, separated in 2021. The "unfinalized marital separation agreement" was negotiated in *Massachusetts*. Contrary to any inference by *Kruger* that the "separation agreement" was a sham, *Perullo* has not lived with *Beth Perullo* (or his children) since that time - she has lived in Massachusetts and he has lived in Texas - pursuing separate lives and relationships.

19. **Paragraph 19** of the *Complaint* states:

   No court has entered any divorce decree determining that the Debtor and Beth Perullo are divorced.

   *Perullo* admits the factual statement in **Paragraph 19** of the *Complaint*. At trial, *Perullo* will testify the reason for delay in commencing the divorce action, but in large part, such has to do with the delays caused by *Kruger's* appointment of a receiver over his former businesses.

20. **Paragraph 20** of the *Complaint* states:

   No court has entered any order approving a marital separation agreement or spousal support agreement between the Debtor and Beth Perullo.

   *Perullo* admits the statement in **Paragraph 20** of the *Complaint*. *Perullo* admits the statement in **Paragraph 20** of the *Complaint*. At trial, *Perullo* will testify the reason for delay in commencing the divorce action into which the separation agreement would be entered, but in large part, such has to do with the delays caused by *Kruger's* appointment of a receiver over his former businesses.

21. **Paragraph 21** of the *Complaint* states:

   The Debtor's schedule of assets and liabilities [Dkt. 6] discloses a debt of $192,000.00 to Beth Perullo incurred in "2021-2025" for "[d]omestic support obligations. Similarly, Debtor disclosed to Kruger as part of his August 6, 2024,

document production that Debtor had been paying his "wife" $10,000.00 a month as part of a "mediated separation beginning in late 2021."

*Perullo* has no objection to the statement in **Paragraph 21** of the *Complaint*.

22. **Paragraph 22** of the *Complaint* states:

The Debtor made multiple transfers to Beth Perullo in the years prior to the bankruptcy filing and after Kruger filed suit against the Debtor in Canada.

*Perullo* admits the statement in **Paragraph 22** of the *Complaint*. Despite being an estranged spouse, *Perullo* is not an absent father - though *Kruger* may not consider it necessary, *Perullo* has a moral obligation to support his estranged spouse and four children (4) in the Boston, Massachusetts area. Contrary to *Kruger's* opinion, taking care of your children by sending their mother money for housing, food, school and school supplies, clothing, utilities, transportation, school events, *etc.*, is not a fraudulent transfer as to *Kruger*.

Moreover, *Perullo* made a prepetition settlement offer to *Kruger* in excess of the total amount of payments to *Beth Perullo* for support made over the preceding twelve months.

23. **Paragraph 23** of the *Complaint* states:

Debtor made the transfers to his wife with intent to defraud Kruger and with the intent of putting his non-exempt assets beyond Kruger's reach.

*Perullo* denies the conclusion in **Paragraph 23** of the *Complaint*. As mentioned above, despite being an estranged spouse, *Perullo* was not an absent father - though *Kruger* may not consider it necessary, *Perullo* had a moral obligation to support his estranged spouse and four children (4) in the Boston, Massachusetts area. Contrary to *Kruger's* opinion, taking care of one's children by sending their mother money for housing, food, school and school supplies, clothing, utilities, transportation, school events, *etc.*, is not a fraudulent transfer - it's fatherhood.

Moreover, *Kruger* garnished bank accounts belonging to *Perullo* prepetition containing deposits, coincidentally, in the approximate amount of payments made to *Beth Perullo* for support.

Those funds remain on deposit at *WestStar Bank* in El Paso since the garnishment action was stayed by the Chapter 7 filing and now constitute property of the Estate subject to administration by the Chapter 7 Trustee. Had *Perullo* intended to put his non-exempt assets beyond *Kruger's* reach, they would not have been on deposit in a garnishable bank account.

24. **Paragraph 24** of the *Complaint* states:

### V. FIRST CAUSE OF ACTION
### Count 1: Nondischargeability of All Debts
### (11 U.S.C. § 727(a)(2))

The allegations of the preceding paragraphs are hereby incorporated as if explicitly set forth herein.

No response is necessary to the statement in **Paragraph 24** of the *Complaint*.

25. **Paragraph 25** of the *Complaint* states:

Debtor incurred obligations to his wife, including a separation agreement, with intent to defraud Debtor's creditors.

*Perullo* denies the allegations in **Paragraph 25** of the *Complaint*.

26. **Paragraph 26** of the *Complaint* states:

Debtor made one or more transfers of property to his wife within one year of the date that he filed his petition for bankruptcy.

*Perullo* admits that transfers were made to his estranged wife but denies the allegations in **Paragraph 26** of the *Complaint* to the extent such infer such were made with the intent to defraud his creditors, including and especially *Kruger*.

27. **Paragraph 27** of the *Complaint* states:

At the time of the transfers, Kruger was a creditor of the Debtor.

*Perullo* admits the allegations in **Paragraph 27** of the *Complaint*.

28. **Paragraph 28** of the *Complaint* states:

The Defendant made the transfers to his wife with the intent to hinder, delay, or defraud Kruger.

*Perullo* denies the allegations in **Paragraph 28** of the *Complaint* that he "made transfers to his wife with the intent to hinder, delay, or defraud Kruger"; to the contrary - he made them with the intent to take care of his family, especially since he was separated from *Beth Perullo* - nothing more, nothing less.

29. **Paragraph 29** of the *Complaint* states:

By transferring property to his wife with the intent of hindering, delaying, or defrauding at least one of his creditors, the Debtor violated the provisions of Section 727(a)(2) of the Bankruptcy Code and is not entitled to a discharge in his bankruptcy case.

*Perullo* denies the assertions in **Paragraph 29** of the *Complaint*. *Perullo* would further show that there is a disconnect between facts alleged in *Kruger's Complaint*, and additional events which occurred prepetition that it fails to mention. *Perullo* made settlement offers to *Kruger* prior to filing for Chapter 7 relief. It is illogical to argue that *Perullo* i). frustrated *Kruger's* actions to collect the *Canadian Judgment*, and ii). made fraudulent transfers as to *Kruger*, all the while *Perullo* was offering to pay money to *Kruger*.

30. **Paragraph 30** of the *Complaint* states:

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment against the Defendant determining the following:

a. That the debts of the Defendant, including the debt of Kruger, be ruled nondischargeable, because the Defendant, with intent to hinder, delay, or defraud a creditor, transferred his property within one year before the date of the filing of the petition in violation of Section 727(a)(2) of the Bankruptcy Code.
b. For an award of attorneys' fees and costs to the extent permitted by law.
c. For such other and further relief as this Court deems just and proper.

*Perullo* objects to the entirety of the relief requested by *Kruger* in **Paragraph 30** of the *Complaint*.

WHEREFORE, PREMISES CONSIDERED, *John D. Perullo,* respectfully requests that this Court deny the relief requested in the *Complaint* in its entirety, as well as award such further relief as applicable.

Respectfully submitted,

**MIRANDA & MALDONADO, P.C.**

/s/ Carlos A. Miranda
Carlos A. Miranda, Esq.
Carlos G. Maldonado, Esq.
5915 Silver Springs Dr. Bldg. 7
El Paso, TX 79912
Telephone: 915-587-5000
Facsimile: 915-587-5001

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was electronically served upon all parties and counsel of record via the Court's electronic filing system on November 26, 2025.

*/s/ Carlos A. Miranda*
Carlos A. Miranda, Esq.
Counsel for the Defendant *John Perullo*

**Plaintiff's Counsel**
David A. Wills, Esq.
K&L Gates, LLP
1717 Main Street, Ste. 2800
Dallas, Texas